STATE OF CONNECTICUT vs. JOHN T. GLAVIN.

Second Judicial District, Norwich, October Term, 1895. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The common council of the city of New London, which was authorized
by charter to regulate, license, or prohibit the peddling or vending of
any merchandise in or through the streets of the city, passed an ordi-
nance providing that no person should, under penalty of a fine, peddle
or sell in any street, or from house to house, in said city, any mer-
chandise, without a license from the mayor or the common council, and
requiring for such license a fee of not more than $50. *Held* that
such ordinance was void, since it did not determine with reasonable
certainty the duration of the license; and also because the fee of $50
required therefor, was so greatly in excess of the cost of issuing the
license as to amount in reality to an irregular and unauthorized rev-
enue tax.

The power given by charter to the common council of a city to license the
peddling or vending of goods in its streets, involves the necessity of
determining with reasonable certainty the extent and duration of the
license and the sum to be paid therefor. Such power must be exer-
cised by the common council itself, and cannot be delegated by it in
whole or in part to any person or authority.

[Argued October 15th—decided November 22d, 1895.]

PROSECUTION for a violation of an ordinance of the city
of New London relating to peddlers; brought to the Police
Court of said city, and thence by defendant's appeal to the
criminal term of the Court of Common Pleas for New Lon-
don County, and tried to the jury before *Noyes, J.;* verdict
and judgment of guilty, and appeal by the defendant for al-
leged errors in the rulings and charge of the court. *Error,
and judgment reversed.*

The case is sufficiently stated in the opinion.

*Jeremiah J. Desmond,* for the appellant (defendant).

I. No ordinance can be considered reasonable, that vests in
the mayor or common council the power to discriminate un-
fairly between persons equally entitled to the same rights or
privileges. The effect of this ordinance is to permit the

State *v.* Glavin.

mayor or common council to arbitrarily grant privileges and favors to one citizen that may be withheld from another; and this without any hearing, without any rule or guide beyond their unrestrained whim or caprice. *State* v. *Conlon*, 65 Conn., 478.

Legislation of this character has never been sanctioned by the courts of this country, and it is safe to assert that it never will be tolerated. *Borough* v. *Phillips*, 148 Pa. St., 482, 24 Atlantic Rep., 76; *State Center* v. *Barenstein*, 66 Iowa, 249; *Yick Wo* v. *Hopkins*, 118 U. S., 356; *Barthel* v. *New Orleans*, 24 Fed. Rep., 563; *In re Frazee*, 63 Mich., 396; *Anderson* v. *City*, 40 Kan., 173; *State* v. *Orange*, N. J. L., 389; Tiedeman on Police Power, 197–200, 289–327, with notes and cases cited.

II. The ordinance contravenes provisions of the Federal Constitution, as well as of the Constitution of this State.

By its terms it discriminates against the citizens and products of other States, allowing the produce of Connecticut farms, and fish taken from Connecticut waters, to be sold and peddled without the restrictions it imposes on similar products of other States.

It also enables the mayor or common council of New London, to grant licenses for the kinds of business it relates to, for a merely nominal fee to citizens of Connecticut, or even residents of New London, and to demand a large or exorbitant fee from the citizens of other States. This objection alone is clearly fatal to the validity of this ordinance. *Brown* v. *Maryland*, 12 Wheat., 419; *Woodruff* v. *Parham*, 8 Wall., 123; *Hinson* v. *Lott*, ibid., 148; *Ward* v. *Maryland*, 12 id., 418; *Welton* v. *Missouri*, 91 U. S., 275; *Wallaing* v. *Mich.*, 116 id., 446; *Emert* v. *Missouri*, 156 id., 296, and cases therein cited; *Donald* v. *Scott et al.*, 67 Fed. Rep., 854; Cooley's Constitutional Limitations, 199, *et seq.;* Tiedeman on Police Power, *supra.*

III. The charter of the city of New London empowers that city to license, regulate or prohibit peddling or vending merchandise or any article of trade within its streets; but does not confer any authority to impose, or collect a revenue

tax in this manner. *Welch* v. *Hotchkiss*, 39 Conn., 140; *New Haven* v. *New Haven Water Co.*, 44 id., 105.

IV. Again, the language of this ordinance is too broad and vague to define, or to constitute, a crime. It does not seem possible to determine the scope or the meaning of the broad terms " peddle, vend or sell any merchandise," as employed therein. It provides no term or period of time for which a license is to be granted. If a license is obtained, how long can the licensee operate under it? And who shall decide this question?

*Hadlai A. Hull*, Prosecuting Attorney, for the appellee (the State).

I. The defendant in this case was unquestionably a peddler and was clearly violating the provisions of the ordinance. Any questions suggested by the exemption of farm products, or fish, with the stamp of this State on them, will have no place in this discussion, because if that part of the ordinance were bad, it would not necessarily vitiate the rest. *State* v. *Wheeler*, 25 Conn., 290. If it had, it might be disposed of by the ruling of this court in *State* v. *Geer*, 61 Conn., 144.

The mayor has no power to discriminate. If the mayor has any power to fix the license fee, he has it purely by implication of law. The right to discriminate between different classes of peddlers certainly should exist, and the only discrimination of which complaint can be made is discriminating between individuals. No power of discretion as to the person, or fitness of persons, is hinted at. A person who tenders the price fixed by the mayor or Common Council, is entitled to a license, and has a plain remedy if it is withheld. The case of *State Center* v. *Barenstein*, 66 Iowa, 249, upon which the defendant relies, is not applicable to this case, because the Code of Iowa authorizes cities and towns simply to license peddling, but gives them no power to prohibit.

II. The defendant next avers that the ordinance is invalid because opposed to common justice, right and reason.

This ground would have little standing independent of

the first, for our court has refused to go into judicial legislation to the extent suggested by such grounds. This court refused, in *State* v. *Conlon*, to consider "the propriety of legislation." See also *Trustees of the Bishop's Fund* v. *Rider*, 13 Conn., 103.

III. The ordinance in question is not void as an illegal restraint of trade. Legitimate trade—trade that is not in any way designated as dangerous or injurious to the public—is the trade intended in all cases; because the General Assembly have the right, and the city council had the right delegated to it, not only to "restrain" but to prohibit this branch of trade, if it can be dignified by such a term.

IV. The fourth ground of demurrer raises the question whether the General Assembly, or a city council by delegation, can impose a license fee, which shall more than pay the expense of issuing the license and supervising the licensee by police regulation. Before this question can fairly avail the defendant, it must be determined that the fee charged, or which may be charged, exceeds the cost of issuing the license, and of maintaining police inspection and regulation. *City of Fayettsville* v. *Carter*, 52 Ark., 301. A license fee in Connecticut, as applied to this class of business, has never been regarded by the profession as invalid, because its collection results in a revenue. The cases upon which the defendant relies, *New Haven* v. *New Haven Water Co.*, 44 Conn., 105, and *Welch* v. *Hotchkiss*, 39 id., 140, contemplate business which the city council cannot prohibit or destroy by any regulation, and business upon which, under the police law of the State, no suspicion has ever been cast. Some municipalities in Connecticut under the liquor license law have collected a great many thousand dollars, without being put to a dollar of expense for the issuing of a license.

ANDREWS, C. J. The defendant was prosecuted in the Police Court of the city of New London, upon a complaint made by the prosecuting attorney of that city, charging "that John T. Glavin, of said city, on the 11th day of July, A. D. 1895, with force and arms, at said city, did peddle, vend and

sell in Potter Street in said city, and from house to house in said city, merchandise, to wit: wringing machines, lamps, and other merchandise, not the product of farms of this State, or fish taken in the waters thereof, without a license from the mayor or Court of Common Council of said city, against the peace, of evil example, and contrary to the form of the statute in such case made and provided, and to an ordinance of the city of New London relating to peddlers."

He was convicted, and appealed to the Criminal Court of Common Pleas in New London County, where he filed a demurrer to the complaint as follows:—

" 1. The ordinance of the city of New London, Connecticut, upon which said complaint and information are based, is unconstitutional and void, inasmuch as it contravenes the provisions of the Federal Constitution, and also the provisions of the Constitution of this State.

" 2. Said ordinance is invalid, for the reason that its provisions are contrary to common justice, right and reason, and abhorrent to the established principles of natural justice and equity.

" 3. Said ordinance is void, as it is in restraint of trade, and an instrument of oppression, and of unfair and intolerable discrimination.

" 4. Said ordinance is invalid, because it imposes a revenue tax entirely without legal warrant, and beyond any authority granted by the legislature to the said city of New London, or to its Court of Common Council, or to its mayor."

This demurrer was overruled, whereupon the defendant pleaded " not guilty." He was tried to the jury who returned a verdict of guilty. He was sentenced to pay a fine of $15, and has appealed to this court.

The ordinance of the city of New London passed on the 4th day of August, 1879, on which the prosecution was brought, is as follows :—

" Sec. 1. No person shall peddle, vend or sell, in any street, or from house to house in the city of New London, any merchandise other than the product of farms in this State, or fish taken in the waters thereof, without a license from the mayor

or the Court of Common Council. Sec. 2. Every person so licensed shall pay therefor, for the use of said city, a license fee of not more than fifty dollars. Sec. 3. Every person who shall violate the provisions of this ordinance, shall be guilty, of a misdemeanor, and pay a fine to the treasury of the city of New London of not less than five nor more than thirty dollars."

The charter of New London (§ 18) provides that "the Court of Common Council, when assembled according to law, shall have power by a major vote of the members present, . . . to regulate license or prohibit the peddling or vending of any goods, wares, merchandise or other articles in and through the streets of said city ;" and to regulate and require license fees from all peddlers and vendors of various commodities in and about the streets and buildings of said city.

It is certainly the settled law that "when by the charter of a city, the power to license a particular occupation within its limits is given to the common council of the city, such power involves the necessity of determining with reasonable certainty both the extent and duration of the license, and the sum to be paid therefor ; such power must be exercised by the common council, and cannot be delegated by it, in whole or in part, to any other person or authority." *Darling* v. *City of St. Paul*, 19 Minn., 389 ; Beach on Public Corporations, § 276 ; Dillon on Mun. Corporations, 4th Ed., § 357 ; *Pinney* v. *Brown*, 60 Conn., 164 ; *State* v. *Fiske*, 9 R. I., 94.

The ordinance in question affixes, in some cases at least, a license fee of fifty dollars. If authority is attempted therein to be given to the mayor or to the Common Council itself, to grant a license for any less sum, the power to do which is very questionable, yet the applicant in every case may be required to pay the sum of fifty dollars. " Whenever a municipal corporation is authorized to make by-laws relative to a given subject, and to require of those who desire to do any act or transact any business pertaining thereto, to obtain a license therefor, the reasonable cost of granting such licenses may be properly charged to the persons obtaining them." *Welch* v. *Hotchkiss*, 39 Conn., 143. The fee of $50 required

by the city of New London for a peddler's license, is so greatly out of proportion to the reasonable cost of issuing it, as to force us to declare that it is not designed for the sole purpose of paying the cost of the license ; but that under the name and form of a license fee it was in reality an irregular assessment of taxes for revenue. As such it is void. *City of New Haven* v. *The New Haven Water Co.*, 44 Conn., 108; *State* v. *Hoboken*, 33 N. J. L., 280 ; *North Hudson County Ry.* v. *Hoboken*, 41 id., 71 ; *Muhlenbrinck* v. *Commissioners*, 42 id., 364 ; *Clark* v. *New Brunswick*, 43 id., 175 ; *Mayor, etc.*, v. *Second Ave. R. R.*, 32 N. Y., 261. Besides, the ordinance is clearly defective in that it does not fix the time for which the license is to be given. We think the demurrer to this, information should have been sustained.

There is error and the judgment is reversed.

In this opinion the other judges concurred.